**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-00839

NATIONAL FEDERATION OF THE BLIND, on behalf of their members and themselves,
COLORADO CROSS-DISABILITY COALITION, on behalf of their members and themselves,
KEVAN SCOTT,
YOLANDA THOMPSON,
HEATHER ALBRIGHT,
KRISTI DURHAM,
AMY RUELL, and
MARK CADIGAN, on behalf of themselves and all others similarly situated,

        Plaintiffs,

v.

PETSMART, INC.,

        Defendant.

---

## CLASS ACTION COMPLAINT AND JURY DEMAND

---

    Plaintiffs National Federation of the Blind ("NFB"), Colorado Cross-Disability Coalition ("CCDC"), Kevan Scott, Yolanda Thompson, Heather Albright, Kristi Durham, Amy Ruell and Mark Cadigan (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, for their Complaint against Defendant, state and allege as follows:

### INTRODUCTION

    1.    This class action seeks to bring an end to discriminatory actions committed by Defendant PetSmart, Inc. (hereafter "PetSmart" or "Defendant") against blind people in Colorado and throughout the United States. PetSmart is knowingly denying blind individuals throughout the United States equal access to the goods and services PetSmart provides to its sighted customers who shop at its retail stores. PetSmart permits its sighted customers to pay for

merchandise with a debit or credit card, and to receive cash back by entering a secure Personal

Identification Number ("PIN") at the register when purchasing goods or services.  Inexplicably,

PetSmart has failed to provide the same access to its blind or visually impaired customers.

PetSmart's touchscreen point of sale devices ("POS Devices") cannot be independently used by

customers who are blind or have low vision because the devices convey all information and

prompts visually.  Therefore, a blind customer has no way of independently knowing what

information is being requested or what is being offered, and has no ability to privately enter a

PIN into the device in order to complete a secure transaction.  Because PetSmart's POS Devices

have no tactile keypad or alternative means of nonvisual access, in order to purchase

merchandise with a debit card, or obtain cash back through a debit or credit card purchase, a

blind or visually impaired customer is required to disclose his/her private PIN to the cashier, or

to someone else. This is an unnecessary and intrusive violation of privacy that could easily be

remedied.  To the extent that Pet Smart offers other goods and services through its inaccessible

touch screens, it further discriminates against its blind customers by not providing independent,

nonvisual access to these goods and services.

   2.  More than a year ago, the Department of Justice ("DOJ") filed a Statement of

Interest in the United States District Court of the Southern District of Florida, setting forth the

DOJ's position that merchants **are required** to provide blind or visually impaired customers a

physical keypad or other alternative means to securely input their PIN numbers when purchasing

goods or services.  *See New v. Lucky Brand Dungarees Stores, Inc.*, No. 1:14-cv-20574, (S.D.

Fla. April 10, 2014) (hereinafter "*New-SOI*").  As the DOJ explained: "Mr. New's allegation that

Lucky Brand violates the ADA when it denies him and other blind patrons a service, privilege or

advantage offered as a matter of course to others – the option to securely and independently conduct debit transactions – falls squarely within the ADA's ambit." *Id.* at p. 9.

3.      Despite having had ample time to comply with this clear directive – which most other merchants did long ago – PetSmart has failed to provide accessible POS Devices in all of its stores.

4.      The individual plaintiffs in this case are legally blind.  Because many blind persons own guide dogs, they count on PetSmart and its competitors to feed, groom, and provide toys and treats for the guide dogs they rely on. As do sighted customers, they also turn to PetSmart to help them feed and care for their personal pets, such as Yolanda Thompson's birds.

5.      PetSmart operates 1,311 stores nationwide, and has retail outlets in every state in the nation (except Wyoming).  On information and belief, PetSmart processes billions of dollars in sales transactions annually, including millions of dollars in sales to its blind customers.

6.      In the last year alone, PetSmart's gross revenue exceeded $6 billion dollars. PetSmart can certainly afford to provide the same tactually discernible keypads and other methods of nonvisual access to all of its blind or visually impaired customers – in all of its retail stores -- and it should be required to do so now, when it matters for its customers, not at its own delayed, uncertain, or leisurely pace.

7.      On behalf of themselves and all others similarly situated, Plaintiffs are asking this Court to require PetSmart to provide equal access to all blind customers nationwide, and to require them to pay damages for their failure to comply with the law.  By its actions or inactions, PetSmart has deprived its blind or visually impaired customers of full and equal access to the privileges and benefits provided to its sighted customers. In doing so, PetSmart has violated

federal law and the laws of numerous states, including Colorado, Massachusetts and Texas, that expressly prohibit discrimination against the blind and that provide for minimum statutory damages for each violation. This class action is intended to end PetSmart's discriminatory practices and to provide compensation to the millions of blind customers who have shopped at PetSmart and have been deprived of equal access to its goods and services.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, and pursuant to its pendent jurisdiction over claims brought under the laws of the States of Colorado, Texas and Massachusetts, pursuant to 28 U.S.C. § 1367(a).

9.     Defendant operates 32 stores in Colorado. Defendant therefore does substantial business in this judicial district. In addition, some of the Plaintiffs' claims arose in this judicial district, and Defendants' actions have caused injury to consumers who reside in this district, including Plaintiffs Scott and Thompson.

10.     Venue in this judicial district is also proper under 28 U.S.C. § 1391 in that a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

## PARTIES

11.     The NFB is a nonprofit corporation incorporated in the District of Columbia, with its principal place of business in Baltimore, Maryland. It is the largest organization of blind and low-vision people in the United States. Founded in 1940, the Federation has grown to over fifty-thousand members. The organization consists of affiliates and local chapters in every state, the District of Columbia, and Puerto Rico. The purpose of the NFB is two-fold – to help blind

persons achieve self-confidence and self-respect, and to act as a vehicle for collective self-expression by the blind.  By providing public education about blindness, information and referral services, scholarships, literature and publications about blindness, aids and appliances and other adaptive equipment for the blind, advocacy services and protection of civil rights, development and evaluation of technology, and support for blind persons and their families, members of the NFB strive to educate the public that the blind are normal individuals who can compete on terms of equality.  This effort and this purpose have been and continue to be adversely affected by Defendant's violations of the law as alleged herein.

12.     The CCDC is a nonprofit corporation incorporated in the State of Colorado.  It is a state-wide organization of people with disabilities – including those who are blind or visually impaired – and their nondisabled allies.  The CCDC's purpose is to ensure full participation of all people with all types of disabilities in the entire community.  As part of that purpose, the CCDC seeks to ensure that people with disabilities have access to, and do not encounter discrimination in, places of public accommodation.  The CCDC engages in extensive outreach as well as advocacy and educational efforts to promote access for and combat discrimination against people with disabilities.  This effort and this purpose have been and continue to be adversely affected by Defendant's violations of the laws as alleged herein.

13.     Yolanda Thompson is and, at all times relevant hereto, was a resident of the state of Colorado.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and the Colorado Anti-

Discrimination Act ("CADA"), C.R.S. § 24-34-301(2.5).  She also is a member of the NFB and CCDC.

14.     Kevan Scott is and, at all times relevant hereto, was a resident of the state of Colorado.  He is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., and the CADA, C.R.S. § 24-34-301(2.5).  He also is a member of CCDC.

15.     Heather Albright is and, at all times relevant hereto, was a resident of the state of Texas.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., and Tex. Hum. Res. Code Ann. ("THRC") § 121.002(4).  She also is a member of the NFB.

16.     Kristi Durham is and, at all times relevant hereto, was a resident of the state of Texas.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., and THRC, § 121.002(4).  She also is a member of the NFB.

17.     Amy Ruell is and, at all times relevant hereto, was a resident of the state of Massachusetts.  She is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq*., and the Massachusetts Public

Accommodations Act, Mass. Gen. Laws ch. 272, § 98 and the Equal Rights Act, Mass. Gen. Laws ch. 93, § 103 (collectively referred to as "MADA"). She also is a member of the NFB.

18.     Mark Cadigan is and, at all times relevant hereto, was a resident of the state of Massachusetts. He is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and the Massachusetts Public Accommodations Act, Mass. Gen. Laws ch. 272, § 98 and the Equal Rights Act, Mass. Gen. Laws ch. 93, § 103 (collectively referred to as "MADA"). He also is a member of the NFB.

19.     Defendant is a corporation incorporated in Delaware and headquartered in Phoenix, Arizona. Defendant owns, leases, or operates a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E), C.R.S. § 24-34-301(5.3), and Mass. Gen. Laws ch. 272, § 92(a), and a public facility pursuant to Tex. Hum. Res. Code Ann. § 121.002(5).

## FACTUAL ALLEGATIONS

20.     PetSmart currently operates 1311 stores in the United States, including 122 stores in Texas, 32 in Colorado and 24 in Massachusetts. PetSmart promotes itself as the largest specialty pet retailer of services and solutions for the life-time needs of pets. Its retail stores sell pet food, pet toys and treats, and offer dog training, pet grooming, pet boarding, and veterinary care, among other services.

21.     PetSmart's annual revenue exceeded $6 billion for each of the last four years. PetSmart was purchased in December 2014 for more than $8 billion dollars by a European-American private equity firm, BC Partners. On information and belief, on an annual basis, PetSmart processes at least 65 million transactions via the POS Devices at issue in this case.

22.     It is estimated that there are 10 million Americans who are visually impaired, including approximately 1.3 million that are legally blind.  The non-profit Guiding Eyes for the Blind estimates that approximately two percent of all people who are blind or visually impaired work with guide dogs.  Although precise numbers are not available at this time, it is safe to estimate that blind customers make millions of sales transactions on an annual basis at PetSmart's many locations.

23.     This case arises out of PetSmart's failure to comply with the legal regulations requiring it to provide equal access to its products and services to blind or visually impaired customers.  Specifically, Defendant has failed to design, construct, and/or own or operate POS Devices that are fully accessible to, and independently usable by, blind or visually impaired people.  The POS Devices in the vast majority of Defendant's stores throughout the United States are not fully accessible to, and independently usable by, blind or visually impaired people.

24.     Instead, the POS Devices have touchscreen surfaces with features that are not accessible or in any way discernible to individuals who are blind or visually impaired.  These Devices have no features that would make them in any way accessible to the blind – they have no voice-activation features; provide no text to speech capability; they are not tactually discernable; and they provide no alternative, nonvisual manner in which to access them. Defendant does not provide any auxiliary aids or services calculated to make its POS Devices fully accessible to, and independently usable by, blind or visually impaired people.

25.     To make a debit card purchase, or get cash back from a debit or credit card purchase using Defendant's POS Devices, a customer must enter their PIN.  Because a blind or visually impaired individual cannot discern the numerical references displayed on the keypad of

the POS Device, a blind or visually impaired individual does not have the ability to independently make a debit purchase, or get cash back from a credit or debit purchase.  Instead, the blind or visually impaired consumer must divulge their PIN in order to complete such a transaction.

26.     A customer's use of a debit card instead of a credit card affords the added protection of requiring the PIN to complete the transaction.  This extra layer of protection is important in the event a card is lost or stolen.  For a blind or visually impaired customer who is required to disclose that PIN in order to proceed with a transaction, that security is compromised.

27.     As the DOJ explained in the *New* case, considerations such as the security or confidentiality of banking information are important in determining whether an auxiliary aid or service is appropriate, and requiring disclosure of a confidential PIN is not an appropriate auxiliary aid or service.  *New-SOI*, at pp. 10-11.

28.     Indeed, POS Devices with tactually discernible keypad surfaces – which are independently usable by a blind or visually impaired individual – are readily available, and are used by a substantial percentage of retailers.

29.     Many of the NFB's and CCDC's members, including Plaintiffs, patronize PetSmart retail stores, intend to continue to do so in the future, and would like to  patronize PetSmart retail stores when the discriminatory barriers are removed or cured.

30.     Upon information and belief, PetSmart's touch screens have the capacity to provide more information than that necessary for completing a transaction.  Due to the fact that the information being presented through these touch screens is entirely inaccessible in a

nonvisual manner, blind customers stand the significant risk of not having full and equal access to goods and services being offered by PetSmart.

31.     The elimination of discrimination such as that of Defendant is at the core of the NFB's and the CCDC's organizational purpose.  To the extent this lawsuit seeks injunctive and/or declaratory relief, the individual participation of each injured NFB and/or CCDC member is not indispensable to the proper resolution of this case.

32.     In addition, Defendant's actions have caused and continue to cause distinct and palpable injury to the NFB and CCDC themselves, along with their members.  Defendant's discriminatory practice has caused NFB and CCDC to expend its resources to investigate and remedy the violations of law alleged herein.

## THE ADA AND STATE LAWS AT ISSUE

33.     On July 26, 1990, Congress enacted the ADA, a comprehensive civil rights law prohibiting discrimination on the basis of disability.  Commercial enterprises were provided one and a half years from enactment of the statute to implement its requirements.

34.     Title III of the ADA prohibits discrimination in places of public accommodation and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities.  *See* 2 U.S.C. §§ 12181-89.

35.     The Department of Justice is the administrative agency charged by Congress with implementing the requirements of the ADA.  In the *New* case, the DOJ explained that a failure to provide auxiliary aids or services necessary to complete private and independent debit card

transactions violates the statutory and regulatory provisions of title III of the ADA. *New-SOI*, at pp. 13-14.

36.     Notwithstanding this clear guidance from the DOJ, PetSmart has failed to provide POS devices in its stores that are accessible to the blind or visually impaired.

37.     Similar to the ADA, the Colorado legislature enacted the CADA as a comprehensive civil rights law prohibiting discrimination in the state of Colorado on the basis of disability.  CADA prohibits discrimination in places of public accommodation and entitles individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation. *See* C.R.S. §§ 24-34-601, 801.

38.     CADA provides minimum statutory damages of $50 for each instance of discrimination.  C.R.S. § 24-34-602.

39.     Texas law likewise prohibits discrimination in places of public accommodation and entitles individuals who are visually or hearing impaired, or individuals with a disability, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of public facilities. *See* Tex. Hum. Res. Code Ann. § 121.003.

40.     Texas law provides for statutory minimum damages of $300 for any violation of the Code.  Tex. Hum. Res. Code Ann. § 121.004.  The statutory policy in Texas is designed "to encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence, to become gainfully employed, and to otherwise fully enjoy and use all public facilities available within the state." *Id.* at § 121.001.  In order to accomplish its statutory objectives, not only does Texas law provide for a $300

minimum per violation, but the law itself provides that "there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability." *Id.* at § 121.004(b).

41.     The Massachusetts legislature enacted MADA as comprehensive civil rights laws prohibiting discrimination in the state of Massachusetts on the basis of disability.  MADA likewise prohibits discrimination in places of public accommodation and entitles individuals who are visually or hearing impaired or individuals with a disability full and equal enjoyment of the accommodations, advantages, facilities and privileges of any place of public accommodation. *See* Mass. Gen. Laws ch. 272, §§ 92A and 98; and Mass. Gen. Laws ch. 93, § 103.

42.     Minimum statutory damages in the amount of $300 per violation are available under Massachusetts law.  Mass. Gen. Laws ch. 272, § 98.

## FACTS PERTAINING TO NAMED PLAINTIFFS

43.     The NFB and CCDC are membership organizations.  Their members include many people like Kevan Scott, Yolanda Thompson, Heather Albright, Kristi Durham, Amy Ruell, and Mark Cadigan, who are blind or visually impaired.  Many of these people are regular patrons of retail establishments such as PetSmart.

### a.     Kevan Scott

44.     In or about January of 2015, on separate occasions Kevan Scott visited two of Defendant's stores located in Colorado Springs, Colorado.

45.     Mr. Scott was unable to make a debit card purchase independently and/or to obtain cash back on either occasion because, at the time of the visits, Defendant's POS Devices had only touchscreen devices that could not be viewed or read by Mr. Scott.  He was therefore unable to independently enter a numeric PIN to complete his purchase.  Mr. Scott has been

denied the full enjoyment of the facilities, goods and services of PetSmart, as a result of accessibility barriers at PetSmart's stores.

### b.    Yolanda Thompson

46.    In or about January of 2015, Yolanda Thompson visited Defendant's store located in Longmont, Colorado.

47.    Yolanda Thompson was unable to make a debit card purchase independently and/or to obtain cash back because, at the time of the visit, Defendant's POS Devices had only touchscreen devices that could not be read or viewed by Ms. Thompson.  She was therefore unable to independently enter her PIN to complete a transaction.   Ms. Thompson has been denied the full enjoyment of the facilities, goods and services of PetSmart, as a result of accessibility barriers at PetSmart's stores.

### c.    Heather Albright

48.    In or about February of 2015, Heather Albright visited one of Defendant's stores located in North Austin, Texas.

49.    Heather Albright was unable to make a debit card purchase independently and/or to obtain cash back because, at the time of the visit, Defendant's POS Devices had only touchscreen devices that could not be read or viewed by Ms. Albright.  She was therefore unable to independently enter her PIN to complete a transaction.  Ms. Albright has been denied the full enjoyment of the facilities, goods and services of PetSmart, as a result of accessibility barriers at PetSmart's stores.

### d.    Kristi Durham

50.    In or about February of 2015, Kristi Durham visited one of Defendant's stores located in North Austin, Texas.

51.    Kristi Durham was unable to make a debit card purchase independently and/or to obtain cash back because, at the time of the visit, Defendant's POS Devices had only touchscreen devices that could not be read or viewed by Ms. Durham.  She was therefore unable to independently enter her PIN to complete a transaction.  Ms. Durham has been denied the full enjoyment of the facilities, goods and services of PetSmart, as a result of accessibility barriers at PetSmart's stores.

### e.    Amy Ruell

52.    In or about April of 2015, Amy Ruell visited one of Defendant's stores located in Braintree, Massachusetts.

53.    Amy Ruell was unable to make a debit card purchase independently and/or to obtain cash back because, at the time of the visit, Defendant's POS Devices had only touchscreen devices that could not be read or viewed by Ms. Ruell.  She was therefore unable to independently enter her PIN to complete a transaction.  Ms. Ruell has been denied the full enjoyment of the facilities, goods and services of PetSmart, as a result of accessibility barriers at PetSmart's stores.

### f.    Mark Cadigan

54.    In or about April of 2015 Mark Cadigan visited one of Defendant's store located in Salem, Massachusetts.

55.     Mark Cadigan was unable to make a debit card purchase independently and/or to obtain cash back because, at the time of the visit, Defendant's POS Devices had only touchscreen devices that could not be read or viewed by Mr. Cadigan.  He was therefore unable to independently enter his PIN to complete a transaction.  Mr. Cadigan has been denied the full enjoyment of the facilities, goods and services of PetSmart, as a result of accessibility barriers at PetSmart's stores.

56.     Based upon an investigation performed by NFB and CCDC, a significant number of the other POS Devices in Defendant's stores are similarly not independently usable by the blind or visually impaired.

57.     Without injunctive relief, Plaintiffs, and other individuals similarly situated, will continue to be unable to independently use Defendant's POS Devices in violation of Plaintiffs' rights under the ADA and state law.

## CLASS ACTION ALLEGATIONS

58.     Plaintiffs seek certification of the following class (hereinafter referred to as the "Nationwide Class") pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2): "all individuals in the United States who were unable to independently make a debit card purchase,  obtain cash back from a debit or credit card purchase, or otherwise complete a transaction independently in a nonvisual manner using a touchscreen POS Device  at any PetSmart retail store because of a visual disability, at any time during the applicable limitation period through the duration of any injunctive relief ordered by the Court."

59.     Plaintiffs also seek certification of the following Colorado subclass (referred to herein as the "Colorado Subclass") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively,

23(b)(3): "all individuals in the United States who were unable to independently make a debit card purchase, obtain cash back from a debit or credit card purchase or otherwise complete a transaction independently in a nonvisual manner using a touchscreen POS Device at any PetSmart retail store in Colorado because of a visual disability, at any time during the applicable limitation period through the present."

60.    Plaintiffs also seek certification of the following Texas subclass (referred to herein as the Texas Subclass") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all individuals in the United States who were unable to independently make a debit card purchase, obtain cash back from a debit or credit card purchase, or otherwise complete a transaction independently in a nonvisual manner using a touchscreen POS Device at any PetSmart retail store in Texas because of a visual disability, at any time during the applicable limitation period through the present."

61.    Plaintiffs also seek certification of the following Massachusetts subclass (referred to herein as the "Massachusetts Subclass") pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all individuals in the United States who were unable to independently make a debit card purchase,  obtain cash back from a debit or credit card purchase, or otherwise complete a transaction independently in a nonvisual manner using a touch screen at any PetSmart retail store in Massachusetts because of a visual disability, at any time during the applicable limitation period through the present."

62.    The members of the Nationwide Class and each Subclass are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

63.     There are common questions of law and fact involved affecting the parties to be represented in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendant's goods, facilities and/or services due to the lack of equal access to Defendant's POS Devices required by law for persons with disabilities. Common questions of law and fact include: (1) Whether PetSmart retail establishments deny the full and equal enjoyment of their goods, services, facilities, privileges, advantages or accommodations to the blind in violation of the ADA and Colorado, Texas and Massachusetts laws; (2) If so, what measures are legally required to bring PetSmart into compliance with the ADA and state law; and (3) Whether Plaintiffs and members of the Nationwide Class and each Subclass sustained damages and, if so, the proper measure of damages or other relief.

64.     The claims of the named Plaintiffs are typical of those of the Nationwide Class and respective Subclasses.

65.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained and are represented by counsel competent and experienced in complex class action litigation.

66.     Class certification of the claims of the Nationwide Class and each Subclass is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Nationwide Class, making appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Nationwide Class and each Subclass as a whole.

67.     Class certification of each Subclass is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Subclass members predominate over

questions affecting only individual Subclass members, and because a class action is superior to

other available methods for the fair and efficient adjudication of this litigation.  In addition,

because Plaintiffs seek only statutory damages for each instance of discrimination, there are no

individual issues concerning each member's damages.

68.     Judicial economy will be served by maintenance of this lawsuit as a class action

in that it is likely to avoid the burden which would otherwise be placed upon the judicial system

by the filing of numerous individual lawsuits and there are no obstacles to effective and efficient

management of this lawsuit as a class action.

### FIRST CLAIM FOR RELIEF
**Violation of the Americans with Disabilities Act**
**(On Behalf of All Plaintiffs and the Nationwide Class)**

69.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-

68 of this Complaint.

70.     Title III of the ADA prohibits discrimination by public accommodations on the

basis of disability.  42 U.S.C. §§ 12101 *et seq*.  Defendant has discriminated against Plaintiffs

and the Nationwide Class in that it has failed to make its POS Devices fully accessible to, and

independently usable by, individuals who are blind or visually impaired.

71.     Sales establishments are public accommodations covered by the ADA.

Defendant's stores in the United States are therefore all public accommodations under the ADA.

72.     Title III of the ADA applies to "any person who owns, leases (or leases to), or

operates a place of public accommodation."  42 U.S.C. § 12182(a).  Defendant owns, leases (or

leases to) and/or operates places of public accommodation.

73.     Defendant has discriminated against Plaintiffs and the Nationwide Class in that it has failed to provide auxiliary aids and services calculated to make its POS Devices fully accessible to, and independently usable by, individuals who are blind or visually impaired in violation of 42 U.S.C. §§ 12101, 12102(2) and 28 C.F.R. §§ 36.101 *et seq.*  Providing the auxiliary aids and services mandated by the ADA would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

74.     Defendant's conduct is ongoing, and, given that Defendant has not complied with the ADA's requirements that public accommodations make their POS Devices fully accessible to, and independently usable by blind or visually impaired individuals, Plaintiffs invoke their statutory rights to injunctive relief, as well as costs and attorneys' fees.

75.     Without the requested injunctive relief, specifically including the request that the Court retain jurisdiction of this matter for a period to be determined after the Defendant certifies that it is fully compliant with the mandatory requirements of the ADA that are discussed above, Defendant's non-compliance with the ADA's requirements that its POS Devices be fully accessible to, and independently usable by, blind or visually impaired people is likely to recur.

**SECOND CLAIM FOR RELIEF**
**Violation of the Colorado Anti-Discrimination Act**
**(On Behalf of Plaintiffs Scott, Thompson, NFB, CCDC, and the Colorado Subclass)**

76.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-75 of this Complaint.

77.     C.R.S. § 24-34-601(1) defines a "place of public accommodation" to include "any place of business engaged in any sales to the public," including "any business offering . . . retail sales to the public."

78.    Defendant's stores in Colorado are places of business engaged in sales to the public and therefore are places of public accommodation for purposes of C.R.S. § 24-34-601.

79.    C.R.S. § 24-34-601(2) provides in relevant part that "[i]t is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of disability . . . the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation . . . ."

80.    Pursuant to the regulations implementing the CADA:

Whenever possible, the interpretation of state law [the provisions of Parts 3 through 7 of Article 34 of Title 24, C.R.S. (1988), as amended] concerning disability shall follow the interpretations established in Federal regulations adopted to implement the Americans with Disabilities Act and . . . in the Federal case law interpreting the Americans with Disabilities Act . . . ." 3 Colo. Code Regs. 708-1:60.1(c)(bracketed text in original).

81.    By, among other things, designing and employing POS Devices that are not independently accessible to blind customers, PetSmart deprived Plaintiffs and the Colorado Subclass the full enjoyment of the goods, services, facilities, privileges, advantages or accommodations of the PetSmart retail establishments in Colorado in violation of § 24-34-601.

82.    Plaintiffs Thompson and Scott are persons with disabilities in that they are legally blind.

83.    As a result of Defendant's noncompliance with the CADA, Defendant must be fined not less than fifty dollars ($50) for each violation.  C.R.S. § 24-34-602.

84.    Plaintiffs are further entitled to any of the statutory remedies available under C.R.S. § 24-34-802(2)(a), including a Court order requiring compliance with the provisions of the applicable section.

**THIRD CLAIM FOR RELIEF**
**Violation of the Texas Human Resources Code**
**(On Behalf of Plaintiffs Albright, Durham, NFB and the Texas Subclass)**

85.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-84 of this Complaint.

86.     Texas passed the Texas Human Resources Code in an effort to "encourage and enable persons with disabilities to participate fully in the social and economic life of the state, to achieve maximum personal independence…and to otherwise fully enjoy and use all public facilities available within the state." Tex. Hum. Res. Code Ann. § 121.001.

87.     The THRC states "[p]ersons with disabilities have the same right as the able-bodied to the full use and enjoyment of any public facility in the state." Tex. Hum. Res. Code Ann. § 121.003(a).

88.     The THRC defines a public facility as, *inter alia*, "a building to which the general public is invited." Tex. Hum. Res. Code Ann. § 121.002(5).

89.     Defendant owns or operates a public facility as defined in § 121.002(5).

90.     Failure to "provide auxiliary aids and services necessary to allow the full use and enjoyment of the public facility" is a prohibited form of discrimination. Tex. Hum. Res. Code Ann. § 121.003(d)(3).

91.     Plaintiffs Albright and Durham are individuals with disabilities in that they are legally blind.

92.     By failing to make their POS Devices fully accessible to, and independently usable by, individuals who are blind or visually impaired, Defendant has discriminated against Plaintiffs and the Texas Subclass by denying them the full and equal enjoyment of the goods,

services, facilities, privileges, advantages, or accommodations of the Defendant's stores in Texas in violation of the THRC.

93.     As a result of Defendant's noncompliance with the THRC, Plaintiffs "may maintain a cause of action for damages in a court of competent jurisdiction, and there is a conclusive presumption of damages in the amount of at least $300 to the person with a disability." Tex. Hum. Res. Code Ann. § 121.004(b).

**FOURTH CLAIM FOR RELIEF**
**Violation of the Massachusetts Public Accommodations Act**
**(On Behalf of Plaintiffs Amy Ruell, Mark Cadigan, NFB, and the Massachusetts Subclass)**

94.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-93 of this Complaint.

95.     Plaintiffs Amy Ruell and Mark Cadigan are legally blind and as such are recognized as members of a protected class under Mass. Gen. Law ch. 272, § 98.

96.     Defendant operates and controls, and operates within, a place of public accommodation as defined by Mass. Gen. Laws ch. 272, § 92A.

97.     Defendant, in violation of Mass. Gen. Laws ch. 272, § 98, has failed to make its POS Devices fully accessible and independently usable by individuals who are blind or visually impaired.

98.     As a result of Defendant's noncompliance with the MADA, Defendant "shall be liable to any person aggrieved thereby for [] damages…provided…that such civil forfeiture shall be of an amount not less than three hundred dollars." Mass. Gen. Laws ch. 272, § 98.

22

**FIFTH CLAIM FOR RELIEF**
**Violation of the Massachusetts Equal Rights Act**
**(On Behalf of Plaintiffs Amy Ruell, Mark Cadigan, NFB, and the Massachusetts Subclass)**

99.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-98 of this Complaint.

100.     Plaintiffs Amy Ruell and Mark Cadigan are legally blind and recognized as a protected class under Mass. Const. amend. CXIV and under the Massachusetts Equal Rights Act, Mass. Gen. Law ch. 93, § 103(a).

101.     The retail stores offered by Defendant in Massachusetts constitute a program or activity under Mass. Const. amend. CXIV.

102.     Defendant has excluded blind or visually impaired people from the participation in and benefits of the services offered at Defendant's stores in Massachusetts and has subjected Plaintiffs to discrimination under Mass. Const. amend. CXIV and the Massachusetts Equal Rights Act, Mass. Gen. Law ch. 93, § 103.

**SIXTH CLAIM FOR RELIEF**
**Declaratory Relief**
**(On behalf of All Plaintiffs and the Nationwide Class)**

103.     Plaintiffs incorporate by reference the preceding allegations pled in paragraphs 1-102 of this Complaint.

104.     An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that PetSmart denies that its stores fail to comply with applicable laws including but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, C.R.S. § 24-34-601 *et seq.*, Tex. Hum. Res. Code

Ann. § 121.001, *et seq*., Mass. Gen. Laws ch. 272, §§ 92A and 98, and Mass. Gen. Law ch. 93, §

103.

     105.    A judicial declaration is necessary and appropriate at this time in order that each

of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

     WHEREFORE, Plaintiffs, on behalf of Kevan Scott, Yolanda Thompson, Heather

Albright, Kristi Durham, Amy Ruell and Mark Cadigan, the CCDC, the NFB, and the members

of the Nationwide Class and respective Subclasses, pray for:

    a.    An Order certifying the Nationwide Class and Subclasses proposed by Plaintiffs,

and naming each Plaintiff as a representative of the Nationwide Class and

appropriate Subclass, and appointing counsel as Class Counsel;

    b.    A declaratory judgment that at the commencement of this action Defendant was in

violation of the specific requirements of the ADA, described above, the relevant

implementing regulations of the ADA, and the specific requirements of the

CADA, THRC, and MADA, as described above, in that Defendant took no action

that was reasonably calculated to ensure that all of its POS Devices were fully

accessible to, and independently usable by, blind or visually impaired individuals;

    c.    A permanent injunction which directs Defendant to take all steps necessary to

brings its POS Devices into full compliance with the requirements set forth in the

ADA, and its implementing regulations, so that the POS Devices are fully

accessible to, and independently usable by, blind or visually impaired individuals,

and which further directs that the Court shall retain jurisdiction for a period to be

determined after Defendant certifies that all of its POS Devices are fully compliant with the relevant requirements of the ADA to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully compliant with the law;

d.  An award of statutory damages to the individual named Plaintiffs and members of each Subclass;

e.  Payment of reasonable attorneys' fees and costs; and,

f.  The provision of whatever other relief the Court deems just, equitable, and appropriate.

**JURY DEMAND**: Plaintiff demands a jury trial on all issues.

Respectfully submitted this 21st day of April, 2015.

MARTINEZ LAW GROUP, P.C.

By:  *s/ Jana Eisinger*
Jana Eisinger
Douglas W. Lambalot
720 South Colorado Boulevard
South Tower, Suite 1020
Denver, CO 80246
303.597.4000
eisinger@mlgrouppc.com
lambalot@mlgrouppc.com

Scott C. LaBarre
LABARRE LAW OFFICES, P.C.
1660 South Albion Street, Suite 918
Denver, CO 80222
303.504.5979
slabarre@labarrelaw.com

Kevin W. Williams
COLORADO CROSS-DISABILITY
COALITION LEGAL PROGRAM
655 Broadway, Suite 775
Denver, CO 80203
720.336.3584
kwilliams@ccdconline.org

ATTORNEYS FOR PLAINTIFFS AND
ALL OTHER INDIVIDUALS SIMILARLY
SITUATED

Plaintiffs' Addresses:

National Federation of the Blind
200 East Wells Street
    at Jernigan Place
Baltimore, Maryland 21230

Colorado Cross-Disability Coalition
(CCDC)
655 Broadway Suite #775
Denver, Colorado 80203

Kevan Scott
2914 North Arcadia #205
Colorado Springs, Colorado 80907

Yolanda Thompson
1768 Meadows Street
Longmont, Colorado 80501

Heather Albright
11454B Ptarmigan Drive
Austin, Texas 78758

Kristi Durham
9300 Quail Wood Drive
Austin, Texas 78758

Amy Ruell
9 Quail Run
Hingham, Massachusetts 02043

Mark Cadigan
5 Wisteria Street, Apt. 1R
Salem, Massachusetts 01970